**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAHDIVISION**
**Case No. 5:24-cv-00148-BJB-LLK**

EQUAL EMPLOYMENT                                                                          PLAINTIFF
OPPORTUNITY COMMISSION,

v.

WABASH NATIONAL                                                                          DEFENDANT
CORPORATION,

## OPINION AND ORDER

This matter has been referred to Magistrate Judge Lanny King under 28 U.S.C. §

636(b)(1)(A) to hear and determine all pretrial matters. [DN 8]. Before the Court is Defendant's

Motion for Protective Order, Motion [DN 52], which seeks to forbid the EEOC from obtaining

the names of certain Wabash employees. Plaintiff responded, Response [DN 56], and the time to

request leave to reply has passed. The matter being ripe for review, the Court **GRANTS** in part

and **DENIES** in part Defendant's Motion for Protective Order, [DN 52], consistent with the

following.

### I.    Legal Standard

District courts have broad discretion over docket control and the discovery process. *See*

*In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). "It is well established that the scope

of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601,

604 (6th Cir. 1993) (citation omitted).

Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain any

"nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case..." *Id.* This language is broadly construed to "encompass any matter that bears

1

on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Veritiv Operating Company*, 2023 WL 2975868, at *6 (internal citations omitted). However, the scope of discovery has limits. "On motion or on its own, the court must limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Generally, the party requesting production "bears the initial burden of demonstrating relevance of the information or materials requested." *Veritiv Operating Company v. Phoenix Paper Wickliffe, LLC*, NO. 5:21-CV-00170-BJB-HBB, 2023 WL 2975868, at *6 (W.D. Ky. April 17, 2023);*Gruenbaum v. Werner Enters.*, Inc., 270 F.R.D. 298, 302 (S.D. Ohio 2010); Fed. R. Civ. P. 26(b)(1), Advisory Committee's Note to 2015 Amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). The party resisting production "has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosures." *Guiden v. Leatt Corp.*, No. 5:10-CV-175-R, 2013 WL 12234612, at *2 (W.D. Ky. Apr. 30, 2013). "[W]hile the relevancy standard may be a liberal one, it is not a 'license to go fishing' with the hope that something might be discovered." *Grayiel v. AIO Holdings, LLC*, No. 3:15-CV-821-TBR-LLK, 2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017).

## II.    <u>Analysis</u>

The EEOC alleges that Defendant Wabash failed to make reasonable accommodations for Hayley Knight's pregnancy-related limitations when she worked as a front-plate Assembler at Wabash. Complaint [DN 1]. Knight was forced to go on unpaid leave because she couldn't continue to perform her work-related duties without modification. *Id.* Wabash is charged with violating the Civil Rights Act, Americans with Disabilities Act, and Pregnant Workers Fairness Act. *Id.*

Relevant to this Motion, the EEOC has asked Wabash to produce information related to Wabash's January 2024 reduction in force (RIF), and part of Wabash's production included a spreadsheet listing each of the thirty-five employees that were laid off, including eighteen Assemblers. Response at 2; Spreadsheet [DN 52-3]. The spreadsheet identifies the employees' dates of employment, the employee's assigned area, and notes pertaining to when the employee was contacted for a recall and whether they accepted the offer of reemployment. *Id.* Critical to this dispute is Wabash's redaction of employee names, which the EEOC argues should be disclosed.

The EEOC offers two reasons for why these names are relevant. First, the employees (or former employees) may be able to answer questions regarding whether a reasonable accommodation was available for Knight. Facts gathered from these employees "will bear on whether Wabash National could have reasonably accommodated Knight's pregnancy-related limitations by allowing other Assemblers to help Knight when they were finished with their work," Response at 10, and whether "other Assemblers could have helped Knight with her tasks for the five minutes she needed it because of her pregnancy-related limitations[,]" *id.* at 16.

3

Second, their salary and rehire dates are purportedly relevant for determining what backpay Knight may be entitled to. *Id.* at 7.

As to backpay, Wabash maintains that Knight's damages must be limited to approximately three months. Memorandum in Support ("Memo"), [DN 52-1] at 6. She stopped work in October 2023, and the RIF took place in January 2024. *Id.* Since the EEOC knows the layoff dates for the other employees, Wabash argues they don't need individual names to calculate how much backpay Knight would be entitled to. The EEOC counters that because Wabash started recalling assemblers in April 2024, Knight's backpay accrual could have recommenced at that time. Response at 11. Interviewing these employees could lead to discoverable evidence like wages and hours worked after recall, which would bear on Knight's damages calculation. *Id.*

Standing alone, the EEOC's argument for discovery on the issue of backpay damages is unavailing. Wabash has already provided notes on when and if these employees were reinstated, and to the extent these notes are inconclusive, there are less intrusive means of obtaining the information that the EEOC seeks. Questions relating to rehire dates and salary are ones that Wabash can answer without having non-parties submit to questioning by the EEOC—which is undoubtedly their purpose in pursuing this disclosure.

Whether the employee names are discoverable for purposes of investigating the availability of reasonable accommodations for Knight presents a much closer question. Both parties cite cases from other circuits that are at least somewhat analogous, although none specifically deal with the issue of investigating the availability of reasonable accommodations.

Wabash cites *Prouty v. Nat'l R.R. Passenger Corp.*, an age discrimination case, where the court denied plaintiff's motion to compel the employer to identify employees by name, stating,

4

"the Court finds that the names of defendant employees are not relevant to plaintiff's suit" and that "the individuals' privacy interests outweigh plaintiff's interests." 99 F.R.D. 545, 549 (D.D.C. 1983). Although the court's reasoning on this point is sparse, nonparties undoubtedly have a valid privacy interest that should be weighed in the Court's proportionality assessment. *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999) ("It is clear that defendants had a valid interest in the privacy of nonparty personnel files and that it was within the district court's power to grant the challenged protective order.") In another case cited by Wabash, the court similarly allowed defendants to withhold individual employee names absent a showing of relevance sufficient to overcome employee privacy interests. *See* Memo at 8 (citing *EEOC v. Autozone*, 2008 WL 11366228, at *2 (C.D. Ill. Jan. 31, 2008)).

The EEOC distinguishes Wabash's citations largely on the grounds that the requesting party had not provided a factual basis showing that individual employee names were relevant. Response at 12-14. For example, in *Clemons v. Dollar General Corp.*, a sex discrimination case cited by Wabash, Memo at 7, the court denied plaintiff's broad request for employee names working at 8,900 stores in thirty-five states. 2010 WL 1994809, at *2 (N.D. Miss. May 18, 2010). But defendant was required to "provide the names and titles of persons in [plaintiff's] direct chain of command." *Id.* The court reasoned that in "the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit. To move beyond that focus the plaintiff must show a more particularized need and relevance." *Id.* (citing *Marshall v. Westinghouse Electric Corporation*, 576 F.2d 588, 592 (5th Cir.1978) (cleaned up). This case supports the proposition that employee names are not *per se* out of bounds in discovery, but the requesting party must delineate a nexus between the personally identifiable information and the demonstrated,

5

particular need. *See also Richardson v. Rock City Mech. Co., LLC*, No. 3:09-cv-0092, 2010 WL 711830, at \*9 (M.D. Tenn. Feb. 24, 2010) (limiting deposition topic to "permanent sheet metal workers at the time of and after the December 2007 layoff who were employed in the two categories in which the plaintiff was or had been employed, and the identification of those workers by race, ethnicity, national origin and race").

In addressing a similar dispute in an FMLA retaliation and pregnancy discrimination case, another judge in this district overruled most of the defendant's objections, allowed discovery of employment and termination data involving hundreds of employees across several years—but drew the line at personally identifiable information. "Defendants will be permitted to redact the names and email addresses of employees included in its responses to the discovery at issue[.]" *Johnson v. Evolent Health LLC*, No. 3:20-cv-601-DJH-CHL, 2021 WL 5530952, at \*4 (W.D. Ky. Nov. 24, 2021). In line with the above-stated proposition, the full request was denied because the plaintiff had "not provided any reason why this information [was] necessary to develop her theory of the case." *Id.*

The EEOC has articulated a need for this discovery: they want to find out "whether Wabash National could have reasonably accommodated Knight's pregnancy-related limitations by allowing other Assemblers to help Knight when they were finished with their work," Response at 10. The request, however, is still disproportionate and not wholly tied to this particular need. The EEOC wants Wabash to remove redactions from all thirty-five names; however, only eighteen of these names are Assemblers like Knight. *Cf. Clemons*, 2010 WL 1994809, at \*2 (reasoning that the "work unit" that generated the complaint is the most natural

6

focus of inquiry).[1] And while Wabash has disclosed the names of several other laid-off employees that might have relevant information, it has not disclosed the names of any other Assemblers except for Knight's parents and partner. *See* [DN 56-5]. The testimony of other Assemblers would not be duplicative or cumulative, as a jury could find these known witnesses to be biased.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion for Protective Order, [DN 52]. Wabash shall produce the Spreadsheet, [DN 52-3], after removing redactions from the names of the Assemblers, within fourteen (14) days of the entry of this Order.

**IT IS FURTHER ORDERED** that within seven (7) days of the entry of this Order, the parties shall file a Joint Status Report proposing new deadlines. *See* [DN 50].

July 10, 2026

C. Counsel

**Lanny King, Magistrate Judge**
**United States District Court**

---

[1] The Complaint alleges that "Wabash accommodates non-pregnant assemblers with disability-related and workplace related limitations, including but not limited to bending restrictions like Knight's, with position swaps, modified duties, and light duty roles under the 'Material Handler' position." Complaint [DN 1] ¶ 34. The EEOC does not address Material Handlers in its Response or why disclosure of these employees' names would be relevant or proportional to the needs of the case. As such, the Court has only considered whether Assemblers' names are discoverable.